OPINION OF THE COURT
Simons, J.
Petitioner was hired by the Elmsford Union Free School District as a remedial reading teacher in 1969 and received tenure in 1972. The school district abolished her position in 1977 and, after determining that she was the tenured teacher with the least seniority, discharged her in accordance with section 2510 (2) of the Education Law. Petitioner instituted this CPLR article 78 proceeding seeking reinstatement, back pay and benefits. She has successfully obtained a determination that she was wrongfully terminated and an order compelling her reinstatement. The issue before us is whether the court properly reduced the award of back pay to petitioner because she had the opportunity to mitigate damages following her wrongful discharge and failed to do so. At issue is the amount of money petitioner could have earned by taking a job *16 respondent offered her for the spring semester of the 1984-1985 school year.
While the article 78 proceeding was pending, respondent rehired petitioner to fill various positions with the understanding that by taking the positions she was not waiving any of her rights. Thus, in 1980 petitioner was hired for a full-time teaching position which she occupied until June 1982 when the position was abolished and she was discharged once again. In 1983 petitioner accepted a position with respondent as a part-time remedial reading teacher which continued during the fall and spring semesters of the 1983-1984 school year and the fall semester of the 1984-1985 school year. She was offered this same position for the spring semester of the 1984-1985 school year but declined the offer for personal reasons.
In September 1985, Supreme Court granted the petition and ordered petitioner reinstated as a full-time tenured teacher, with back pay and benefits, effective June 24, 1977. The court determined that petitioner should receive the amount of salary provided in the collective bargaining contracts covering petitioner’s teaching position for the period of her wrongful discharge less certain income she had derived from teaching employment. It also held that petitioner had a duty to mitigate damages by accepting respondent’s tender to teach part time in the spring of 1985. Accordingly, it ordered that the award be reduced by the amount of money petitioner would have earned had she not declined that position. The Appellate Division affirmed and we granted petitioner leave to appeal.
School districts must have sufficient latitude within the law to manage their affairs efficiently and effectively (see, Matter of Lezette v Board of Educ., 35 NY2d 272, 278; Matter of Young v Board of Educ., 35 NY2d 31, 34). To this end, the Legislature has recognized that school districts may need to abolish teaching positions for overriding fiscal reasons, even when doing so results in the discharge of tenured employees (see, Education Law § 2510; Steele v Board of Educ., 40 NY2d 456, 462 [addressing Education Law § 2585, the counterpart to § 2510]; Matter of Lezette v Board of Educ., supra, at 278; Matter of Young v Board of Educ., supra, at 34). When a position is abolished "the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued” (Education Law § 2510 [2]). A discharge is justified under the statute if the school district has made a good-faith determination based on economic con *17 siderations (see, Matter of Zurlo v Ambach, 53 NY2d 1035, 1037; Matter of Lezette v Board of Educ., 35 NY2d 272, 278, supra; Matter of Young v Board of Educ., 35 NY2d 31, 34, supra).
There is no claim here that the Board acted in bad faith or for improper reasons when it discharged petitioner: the discharge was wrongful only because of the Board’s mistaken assumption that she was the tenured teacher with the least seniority. In these circumstances, it is consistent with the economic purposes underlying the statute to require petitioner to lessen the economic impact of her erroneous discharge by accepting respondents’ reasonable tender of employment. The school must make petitioner whole for its mistake, but she was obliged to take reasonable steps to avoid or minimize her loss.
Petitioner contends that we held otherwise in Matter of Hawley v South Orangetown Cent. School Dist. (67 NY2d 796). Hawley is significantly different from this case, however. It involved section 3020-a of the Education Law, a section which applies to tenured teachers who have been suspended while facing disciplinary charges. The section establishes a set of procedural due process rights for notice and hearing for the protection of teachers before they are discharged for cause. The statutory scheme, and our decisions implementing it, recognize that the teacher, though suspended, continues to be an employee of the school district and as such is entitled to all the benefits of that employment, unless those rights are otherwise limited by statute, because "a tenured teacher’s 'Compensation is a matter of such substantive right * * * that it cannot be taken away’ ” without authorization (Matter of Hawley v South Orangetown Cent. School Dist., 67 NY2d 796, 798, supra; Matter of Jerry v Board of Educ., 35 NY2d 534, 541-542; cf., Matter of Melti v Nyquist, 41 NY2d 183).
Accordingly, we held in Hawley that compensation paid to a tenured teacher during the period of suspension may not be properly characterized as damages to which a common-law duty to mitigate would apply and that a school district could not withhold such compensation by reason of the teacher’s failure to seek other employment. The holding was a natural consequence of the relationship between the parties because a teacher could not be expected or compelled to seek substitute employment while still employed by the school district during the period of suspension.
*18 The situation differs when a teacher has been discharged pursuant to section 2510. Unlike a suspended teacher, an excessed teacher does not continue in the employ of the school district and has no continuing right to the payment of salary. The teacher has a right under section 2510 (3) to be placed on a "preferred eligible list of candidates for appointment to a vacancy”, but that right is limited and based on the happening of an uncertain future event. Thus, excessed teachers must seek alternative employment if they intend to continue working. To impose a similar duty to accept available employment on excessed teachers who are pursuing legal remedies to regain their positions is neither inconsistent with the teachers’ status nor more burdensome than the duty imposed on any other teacher discharged pursuant to section 2510.
There is a further point to be made. In Matter of Jerry v Board of Educ. (35 NY2d 534, supra), we noted that the purpose of the statutory power to suspend teachers under charges of misconduct was to insure the sound administration of our public schools, through the protection of the pupils, the teacher and the public in general until the charges are resolved. That purpose is not advanced by withholding the pay of a suspended teacher pending the outcome of a hearing and thus, we required an explicit statutory authorization before we would recognize the school districts’ power to do so (Matter of Jerry v Board of Educ., supra, at 541-543). However, the purpose behind the legislative grant of power to the school districts to abolish positions and excess teachers, notwithstanding their tenure rights, is economic. Imposition of an obligation on the teacher to undertake reasonable steps to mitigate any financial harm associated with an erroneous discharge is entirely consistent with this purpose; indeed, it is a necessary corollary of the statute’s underlying objective of conserving public funds.
Moreover, even in the case of suspended teachers governed by section 3020-a of the Education Law, we recognized the school district’s authority to compel a suspended teacher to work at an " 'assignment * * * which bears reasonable relationship to the * * * teacher’s competence and training and is consistent with the dignity of the profession’ ” in order to ameliorate "[a]ny seeming detriment to the public fisc,” during the pendency of the hearing (Matter of Hawley v South Orangetown Cent. School Dist., supra, at 798; Matter of Adlerstein v Board of Educ., 64 NY2d 90, 100). If that power exists with respect to teachers still employed by the school district, a *19 fortiori it applies to discharged teachers who seek to be reinstated.
Our holding is also consistent with the Commissioner of Education’s interpretation of section 2510 (see, Matter of Specht, 20 Ed Dept Rep 457, 459). His interpretation should be accorded substantial weight since section 2510 is silent on the question of mitigation and the Commissioner’s construction of it is reasonable (see, Matter of Ward v Nyquist, 43 NY2d 57, 63; Matter of Lezette v Board of Educ., 35 NY2d 272, 281, supra).
Finally, petitioner contends that even if a duty to mitigate is imposed on excessed teachers, the anticipated earnings from the job offered her in January 1985 should not be deducted from her award because the offer of half-time employment at an hourly wage was not of the same or substantially similar character as her full-time position at an annual salary. The position offered was in the same area of teaching in which she had been employed, however, and she had previously accepted it for three semesters. That the position paid a salary less than her 1977 position is of no consequence since the school district remains liable for any difference. Petitioner was free to reject the employment for personal reasons, but she cannot now be heard to say that she is entitled to recover the amount of back pay she would have earned during that time had she accepted it.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
Order affirmed, with costs.