79 N.Y.2d 1 (1992)
In the Matter of David Winter, Appellant,
v.
Board of Education for the Rhinebeck Central School District et al., Respondents.
Court of Appeals of the State of New York.
Argued November 21, 1991.
Decided January 14, 1992.
Ira Paul Rubtchinsky, Bernard F. Ashe and Rocco A. Solimando for appellant.
David S. Shaw and Julie R. Seitz for respondents.
Jay Worona and Joseph B. Porter for the New York State School Boards Association, Inc., amicus curiae.
Chief Judge WACHTLER and Judges KAYE and HANCOCK, JR., concur with Judge ALEXANDER; Judge SIMONS dissents and votes to affirm in a separate opinion in which Judges TITONE and BELLACOSA concur.
*3 ALEXANDER, J.
On this appeal we are presented with the question left open by our decision in Matter of Smith v Board of Educ. and Matter of Cutler v Board of Educ. (65 N.Y.2d 797). In that case, based on explicit statutory authorization in the Education Law, we concluded that the appellants, both of whom were tenured, but who had not obtained permanent certification after their provisional teaching certificates had expired, were not entitled to be paid their salaries during their suspension pursuant to section 3020-a of the Education Law for teaching without certification. We declined to reach the argument advanced by the respondent Board of Education in those cases  that teachers who hold a teaching certificate outside of the area to which they have been assigned to teach are "unqualified" for the purposes of being paid pending the outcome of a hearing pursuant to Education Law § 3020-a (id., at 799). We now reject what is essentially the same argument advanced here by the Rhinebeck Central School District Board and conclude that because there is no statutory authorization for withholding the pay of a tenured and certified teacher charged *4 with lack of certification pending the determination of a section 3020-a proceeding where the teacher has been involuntarily reassigned to teach a subject area in which he or she is not certified, such teacher's pay may not be withheld.
Appellant David Winter was hired by respondent Board of Education for the Rhinebeck Central School District to teach business education and taught in that area from 1973 to 1989. He received certification in driver and safety education in 1971, and in commerce (business) in 1974. He became tenured in 1975. In 1989, his position as a high school business teacher was eliminated as part of respondent's reduction in force. Purportedly relying on section 2510 of the Education Law, respondent reassigned appellant to teach secondary science, a subject he was not certified to teach, and simultaneously informed him that proceedings pursuant to Education Law § 3020-a would be commenced against him due to his lack of certification to teach science. Respondent suspended appellant without pay pending the outcome of the section 3020-a proceeding. Pursuant to his collective bargaining agreement, appellant challenged the propriety of his involuntary reassignment under Education Law § 2510 through final and binding arbitration. He also commenced this CPLR article 78 proceeding seeking reinstatement to a teaching position within his area of tenure and certification, back pay, current pay and continued pay pending the final determination of the disciplinary proceeding.
Supreme Court dismissed the petition to the extent that it sought reinstatement because that issue was then pending before an arbitrator.[1] The court concluded, however, that the Board did not have the authority to suspend appellant without pay since appellant was certified in the area for which he was originally hired to teach, and his suspension was due to the Board's action in reassigning him to an area in which he lacked certification. That court directed the Board to pay appellant from the date of his suspension until the determination of the disciplinary proceeding.
The Appellate Division modified by reversing so much of Supreme Court's judgment as directed the Board to pay appellant during his suspension. Relying on our decision in Matter of Meliti v Nyquist (41 N.Y.2d 183), the Appellate Division concluded that notwithstanding appellant's certification in the area for which he was originally hired to teach, he was not *5 certified to teach in the area to which he had been reassigned, and therefore was "unqualified" to receive his salary pending the determination of the disciplinary proceeding. That court stated that a different holding would produce the "`incongruous result'" that "`a teacher could be unqualified for the purposes of teaching in the educational area for which he was hired, but qualified for the purposes of drawing his pay while he was suspended from teaching'" (Matter of Winter v Board of Educ., 170 AD2d 825, 826, quoting Matter of Cutler v Board of Educ., 104 AD2d 988, affd 65 N.Y.2d 797, supra). Petitioner appeals pursuant to leave granted by this Court, arguing only the issue whether the Appellate Division erred in denying him pay during his suspension. We now reverse.
It is well settled that compensation is a matter of such substantive right on the part of the teacher that it cannot be taken away except pursuant to explicit statutory or collective bargaining authorization (see, Matter of Board of Educ. v Nyquist, 48 N.Y.2d 97; Matter of Jerry v Board of Educ., 35 N.Y.2d 534, 541-542; see also, Matter of Derle v North Bellmore Union Free School Dist., 77 N.Y.2d 483, 488; Matter of Adlerstein v Board of Educ., 64 N.Y.2d 90, 98). The Board makes no claim that the applicable collective bargaining agreement authorizes it to withhold appellant's pay. However, relying on our decision in Matter of Meliti v Nyquist (supra), it contends that Education Law §§ 3001, 3009 and 3010 provide explicit statutory authorization for its action in withholding appellant's salary pending the outcome of a disciplinary hearing pursuant to Education Law § 3020-a.
Both parties recognize that resolution of this issue turns on whether a teacher is "qualified" pursuant to Education Law § 3001. The Board argues, and the Appellate Division concluded, that a teacher who lacks certification in the subject to which he or she is assigned, in effect possesses no certificate at all and is therefore "unqualified" for the purpose of being paid pending the outcome of a section 3020-a disciplinary hearing; thus, our decision in Meliti is controlling. Appellant contends, on the other hand, that because there is no specific statutory authorization for suspending a tenured, certified teacher without pay, even though that teacher has been assigned to teach a subject in which he or she lacks certification, the general *6 principle established in Matter of Jerry is controlling and he is entitled to be paid.[2]
We reject as inconsistent with the plain language of Education Law § 3001 the attempt to equate teacher certification, and hence, "qualification," with certification to teach in a specific subject area. Section 3001, entitled "Qualifications of teachers," provides that "[n]o person shall be employed or authorized to teach in the public schools of this state who is * * * (2) Not in possession of a teacher's certificate * * * or a diploma issued on the completion of a course in a state college for teachers or state teachers college of this state." In Meliti (supra), where a tenured teacher who failed to acquire the requisite graduate credits to receive a permanent teaching certificate was suspended pursuant to Education Law § 3020-a on charges of teaching without certification after his provisional teaching certificate expired, we found in the confluence of sections 3001, 3009 and 3010 of the Education Law the explicit statutory authorization required by Jerry (supra). We held that the appellant in Meliti was not entitled to be paid during his suspension because section 3009 (1) forbids the payment of school district moneys to an "unqualified" teacher, and section 3010 makes it a misdemeanor for any school official to pay a salary to an "unqualified" teacher. We therefore concluded that "in the case of an uncertified teacher there is a quite specific statutory prohibition against payment during suspension" (Matter of Meliti v Nyquist, supra, at 188 [emphasis added]; see also, Matter of Smith v Board of Educ. and Matter of Cutler v Board of Educ., 65 N.Y.2d 797, 799, supra).
Unlike the situation in Meliti, however, appellant Winter, holding certificates in business and driver education, was clearly certified to teach on the day he was suspended, and thus was "qualified" pursuant to Education Law § 3001 (see, *7 Matter of Bali v Board of Educ., 68 AD2d 360, 362-363 [Hancock, Jr., J.], appeal dismissed 48 N.Y.2d 630; cf., Matter of Smith v Board of Educ. and Matter of Cutler v Board of Educ., supra, at 799; Matter of Meliti v Nyquist, supra). It is evident that the Legislature, in enacting sections 3001, 3009 and 3010 of the Education Law, rather than requiring certification in a particular subject as a prerequisite for teacher "qualification," was concerned with prohibiting the hiring of persons for teaching positions who lacked minimum general qualifications, without regard to certification in any specific area. "Thus, for purposes of qualification under the statute, a teaching certificate has been equated with what can only be a requirement of qualification in the general area of teaching and not in any specific area: i.e., the possession of a `diploma issued on the completion of a course in a state college for teachers or state teachers college of this state.' (Education Law, § 3001, subd 2.)" (Matter of Bali v Board of Educ., supra, at 363.) In fact, appellant Winter was initially hired to teach the subject of high school business, an area in which he was certified to teach, and taught in that area continuously until respondent involuntarily reassigned him to teach secondary science.
The Board argues that regulations promulgated by the Commissioner of Education support its position that a teacher's lack of certification in his or her assigned area renders that teacher unqualified to teach pursuant to Education Law § 3001, and thus unqualified pursuant to sections 3009 (1) and 3010 for the purpose of receiving a salary during the course of a section 3020-a disciplinary proceeding. However, consistent with the legislative purpose of ensuring that the State's teachers are generally qualified to teach, these regulations, by their terms, only apply to the initial hiring, or to the reemployment of a teacher, neither of which is the situation here. Pursuant to the provisions of sections 3006 (3), 3009 (1) and 3010 of the Education Law, the regulations provide that, except under certain enumerated conditions, "no uncertified teacher (any professional staff member not holding a valid certificate for the area or level to be served) may be employed by a board of education for the first time" (8 NYCRR 80.18 [a] [emphasis added]). Similarly, 8 NYCRR 80.18 (b) prohibits the reemployment of an uncertified teacher except under certain conditions. Inasmuch as appellant is neither being hired for the first time, nor being reemployed, these regulations are irrelevant to the resolution of the question before us.
*8 Finally, we note the dissent's assertion that the respondent will prevail on the issue of whether petitioner's suspension was proper, because the school district is not required to retain a teacher who lacks the "`appropriate certification'" (dissenting opn, at 11, citing 8 NYCRR 30.11). However, it is not at all clear that Education Law § 2510 authorizes a Board such as respondent to reassign teachers to areas in which they are uncertified, and on the basis of lack of certification, to bring charges against them under section 3020-a to remove them from employment. Section 2510 provides that when a Board of Education abolishes a position, the services of the teacher having the least seniority within the particular tenure area must be discontinued, and that teacher placed on a preferred list for appointment, in order of length of service, to a then-existing or subsequently occurring vacancy in an office or position similar to the one which such person filled without reduction in salary or increment (Education Law § 2510 [2], [3]).[3] The suggestion by the dissenters that Education Law § 2510 requires a school district to reassign a teacher whose position has been abolished to teach a subject that he is uncertified to teach finds no support in the statute. The statute does not require such a procedure, and whether it authorizes the scheme employed by respondent here is, at best, problematic. There appears to be no authority for respondent's practice of reassigning teachers to an area in which they are uncertified, and then charging the teacher with lack of certification in order to terminate his or her services (see, e.g., Matter of Steele v Board of Educ., 53 AD2d 674, 675 [Board of Education could not circumvent the mandate of Education Law § 2510 by assigning petitioner to a position in an area of certification in which she was not likely to be certified and then dismissing her for lack of certification]).
Because there is no statutory authority to support the *9 payless suspension of appellant pending the determination of the section 3020-a proceedings against him, we conclude that appellant is entitled to back pay from the date of his suspension and continued pay until such time as the disciplinary proceedings are concluded. Accordingly, the Appellate Division order, insofar as appealed from, should be reversed, with costs, and the judgment of Supreme Court, Dutchess County, reinstated.
SIMONS, J. (dissenting).
Petitioner concededly cannot teach any subject in which respondent school district has an available opening. In my view, therefore, he should not be paid during proceedings necessary to terminate his employment. Accordingly, I would affirm.
The question presented is whether the Jerry rule (Matter of Jerry v Board of Educ., 35 N.Y.2d 534), which requires a school district to pay a suspended teacher contesting disputed charges of misconduct, should be applied to require payment of teachers suspended because they are uncertified to fill the only teaching positions available to them. Its resolution requires us to strike the proper balance between the rights of tenured teachers and the efficient and economical operation of the school system. Ruling in favor of the teachers, the majority holds that Jerry should be extended to apply to the facts of this case. I disagree and because the matter has serious fiscal and legal consequences in these distressing economic times, I set forth my reasons in detail.
The circumstances have become increasingly familiar. Respondent school district, because of declining enrollments and budgetary constraints, eliminated one business department position, all driver education classes and all in-house supervision. Because of these cuts in curriculum, the Board voted a reduction in force. Its action was specifically authorized by section 2510 of the Education Law as long as it acted in good faith for legitimate economic and educational purposes (see, Matter of Gross v Board of Educ., 78 N.Y.2d 13, 16-17; Matter of Lezette v Board of Educ., 35 N.Y.2d 272; Matter of Young v Board of Educ., 35 N.Y.2d 31).
Petitioner was certified to teach business and driver's education. Inasmuch as the driver's education classes were eliminated and the remaining business courses were assigned to a more senior teacher, there remained no positions available for which petitioner was qualified. Respondent could not summarily discontinue his services, however: section 2510 (2) of the *10 Education Law authorized petitioner to "bump" a teacher having less seniority within his tenure area, i.e., the general secondary school area. There were less senior teachers within his tenure area teaching subjects which petitioner was not certified to teach. Consequently, respondent had no choice but to discontinue a tenured and certified secondary science teacher, to assign petitioner to teach science, though he was not certified to teach the subject, and then to bring charges to remove him because he was incompetent (see, Matter of Lynch v Nyquist, 41 AD2d 363, 365, affd on opn below 34 N.Y.2d 588).
Respondent suspended petitioner but it could remove him only pursuant to the formal procedure set forth in section 3020-a of the Education Law and, accordingly, it instituted those proceedings. While the proceedings are pending, the Board will be required to pay a substitute to teach the subject assigned to petitioner. The court now holds that during this period, while petitioner is suspended, it must pay petitioner's salary as well. According to an investigative report of the New York State School Boards Association contained in its amicus brief, the proceedings could last as long as two years and add litigation costs of approximately $100,000. Manifestly, the suspended teacher has no incentive to hasten this process or minimize its cost. Thus, what began as an effort by respondent to save public resources and to promote efficient, productive schools has produced neither, at least for the immediate future. Salary expenses have been doubled, litigation expenses incurred and science students will be taught by substitute teachers. One might reasonably ask what rule of law requires such waste of educational resources.
The authority relied upon is Matter of Jerry v Board of Educ. (35 N.Y.2d 534, supra). In that case, we considered two appeals involving charges of teacher misconduct filed pursuant to section 3020-a of the Education Law. A closely divided court held that absent specific statutory authorization, a teacher charged with misconduct could not be suspended without pay pending disciplinary hearings (id., at 542).
The Jerry decision addressed proceedings involving contested charges which in one case dealt with a teacher's use of excessive physical force on students and in the other dealt with a teacher's improper sexual intimacies with an 18-year-old student. In view of the charged misconduct, a proper concern for possible harm to students made the teachers' suspension necessary but we required that they be paid during *11 removal hearings because they had not yet been proved guilty. The decision reflected the notion that teachers should not be punished by loss of pay unless and until it was shown that they were guilty of the alleged charges, a view consistent with traditional notions of fairness explicit in the criminal law and the Civil Service Law (see, CPL 300.10 [2]; Civil Service Law § 75 [3]).
No similar concerns are involved in cases involving uncertified teachers. They must be suspended for the students' sake because they are unable to teach the subject matter. But there is no doubt about the outcome of the proceedings: respondent will prevail because, under the Rules of the Board of Regents, the school district is not required to retain a teacher who lacks the "appropriate certification" (8 NYCRR 30.11). Concededly, petitioner lacks such certification here, but the fact is easily established by reference to the records of the Education Department in any case. Although procedural regularity requires the School Board to establish that uncontested fact in a section 3020-a hearing, the Board should not be required to pay petitioner while the proceedings are pending when he is not competent to teach any class available to him. The majority's decision does just that, however; it compels the School Board to pay a teacher who is not capable of performing any educational services for the district.
We have previously recognized that a School Board could suspend an uncertified teacher without pay in certain instances and that rule should be applied here. Following Jerry (supra), we held that suspension without pay was authorized if the teacher was uncertified in any area because the teacher was "unqualified" under Education Law § 3001 (2); § 3009 (1) (Matter of Meliti v Nyquist, 41 N.Y.2d 183; Matter of Smith v Board of Educ. and Matter of Cutler v Board of Educ., 65 N.Y.2d 797). True, those decisions rested on the Jerry formulation; suspension without pay was warranted because there was statutory authority to support the result. The requirement has been imposed by judicial decision, however, and we should not extend it to cover these facts. There is no principled basis to permit suspension without pay of a teacher not competent to fill any teaching position but forbid suspension without pay of a teacher not competent to fill any teaching position available. I would not, therefore, require respondent to pay petitioner here.
There can be no question about the desirability of reasonable *12 rules promoting teachers' job security. They enable school districts to maintain a stable and experienced staff and help attract competent people to the teaching profession. However, local school authorities possess substantial leeway to administer their affairs and reductions in force have been recognized by the Legislature and this Court as necessary steps to promote efficiency and economy in a school system (see, Education Law § 2510; Matter of Gross v Board of Educ., 78 N.Y.2d 13, supra). The circumstances presented here will recur increasingly and, as it now stands, in these difficult choices involving teacher benefits and fundamental educational concerns, teachers are to be unduly preferred over the efficient use of finite public resources to effectively educate our children.
Because the Court is not compelled to apply the Jerry rule to cases which do not involve allegations of teacher misconduct, and because the majority's decision extending it to this case seriously constricts a School Board's ability to manage its affairs efficiently and economically, I vote to affirm.
Order, insofar as appealed from, reversed, etc.
NOTES
[1] It appears that the arbitration is still pending and undetermined.
[2] Whether the School Board's action in reducing its teaching staff for economic and educational reasons is authorized by Education Law § 2510, so long as it "acted in good faith" (dissenting opn, at 9) is not relevant to the issue before us. Rather, the question we must determine is whether explicit statutory authorization exists which entitles respondent to withhold compensation from a certified, tenured teacher during the pendency of disciplinary proceedings under Education Law § 3020-a (Matter of Jerry v Board of Educ., 35 N.Y.2d 534). Moreover, nothing in Jerry supports the dissent's assertion that our holding rested on "traditional notions of fairness explicit in the criminal law and the Civil Service Law," or on the ground that "teachers should not be punished by loss of pay unless and until it was shown that they were guilty of the alleged charges" (dissenting opn, at 11).
[3] Moreover, the Rules of the Board of Regents cited by the dissent provide, as pertinent, that:

"Nothing herein contained shall be construed to authorize * * * a board of education or board of cooperative educational services to place or retain an individual in a position for which such individual does not possess appropriate certification in accordance with the provisions of Part 80 of the Regulations of the Commissioner of Education".
(Rules of Board of Regents, 8 NYCRR 30.11 [emphasis added].) Since the petitioner here was placed in a position for which he does not possess the appropriate certification, it would appear that this regulation refutes, rather than supports the contentions of the dissent.