Simons, J.
(dissenting). Petitioner concededly cannot teach any subject in which respondent school district has an available opening. In my view, therefore, he should not be paid during proceedings necessary to terminate his employment. Accordingly, I would affirm.
The question presented is whether the Jerry rule (Matter of Jerry v Board of Educ., 35 NY2d 534), which requires a school district to pay a suspended teacher contesting disputed charges of misconduct, should be applied to require payment of teachers suspended because they are uncertified to fill the only teaching positions available to them. Its resolution requires us to strike the proper balance between the rights of tenured teachers and the efficient and economical operation of the school system. Ruling in favor of the teachers, the majority holds that Jerry should be extended to apply to the facts of this case. I disagree and because the matter has serious fiscal and legal consequences in these distressing economic times, I set forth my reasons in detail.
The circumstances have become increasingly familiar. Respondent school district, because of declining enrollments and budgetary constraints, eliminated one business department position, all driver education classes and all in-house supervision. Because of these cuts in curriculum, the Board voted a reduction in force. Its action was specifically authorized by section 2510 of the Education Law as long as it acted in good faith for legitimate economic and educational purposes (see, Matter of Gross v Board of Educ., 78 NY2d 13, 16-17; Matter of Lezette v Board of Educ., 35 NY2d 272; Matter of Young v Board of Educ., 35 NY2d 31).
Petitioner was certified to teach business and driver’s education. Inasmuch as the driver’s education classes were eliminated and the remaining business courses were assigned to a more senior teacher, there remained no positions available for which petitioner was qualified. Respondent could not summarily discontinue his services, however: section 2510 (2) of the *10 Education Law authorized petitioner to "bump” a teacher having less seniority within his tenure area, i.e., the general secondary school area. There were less senior teachers within his tenure area teaching subjects which petitioner was not certified to teach. Consequently, respondent had no choice but to discontinue a tenured and certified secondary science teacher, to assign petitioner to teach science, though he was not certified to teach the subject, and then to bring charges to remove him because he was incompetent (see, Matter of Lynch v Nyquist, 41 AD2d 363, 365, affd on opn below 34 NY2d 588).
Respondent suspended petitioner but it could remove him only pursuant to the formal procedure set forth in section 3020-a of the Education Law and, accordingly, it instituted those proceedings. While the proceedings are pending, the Board will be required to pay a substitute to teach the subject assigned to petitioner. The court now holds that during this period, while petitioner is suspended, it must pay petitioner’s salary as well. According to an investigative report of the New York State School Boards Association contained in its amicus brief, the proceedings could last as long as two years and add litigation costs of approximately $100,000. Manifestly, the suspended teacher has no incentive to hasten this process or minimize its cost. Thus, what began as an effort by respondent to save public resources and to promote efficient, productive schools has produced neither, at least for the immediate future. Salary expenses have been doubled, litigation expenses incurred and science students will be taught by substitute teachers. One might reasonably ask what rule of law requires such waste of educational resources.
The authority relied upon is Matter of Jerry v Board of Educ. (35 NY2d 534, supra). In that case, we considered two appeals involving charges of teacher misconduct filed pursuant to section 3020-a of the Education Law. A closely divided court held that absent specific statutory authorization, a teacher charged with misconduct could not be suspended without pay pending disciplinary hearings (id., at 542).
The Jerry decision addressed proceedings involving contested charges which in one case dealt with a teacher’s use of excessive physical force on students and in the other dealt with a teacher’s improper sexual intimacies with an 18-year-old student. In view of the charged misconduct, a proper concern for possible harm to students made the teachers’ suspension necessary but we required that they be paid during *11 removal hearings because they had not yet been proved guilty. The decision reflected the notion that teachers should not be punished by loss of pay unless and until it was shown that they were guilty of the alleged charges, a view consistent with traditional notions of fairness explicit in the criminal law and the Civil Service Law (see, CPL 300.10 [2]; Civil Service Law § 75 [3]).
No similar concerns are involved in cases involving uncertified teachers. They must be suspended for the students’ sake because they are unable to teach the subject matter. But there is no doubt about the outcome of the proceedings: respondent will prevail because, under the Rules of the Board of Regents, the school district is not required to retain a teacher who lacks the "appropriate certification” (8 NYCRR 30.11). Concededly, petitioner lacks such certification here, but the fact is easily established by reference to the records of the Education Department in any case. Although procedural regularity requires the School Board to establish that uncontested fact in a section 3020-a hearing, the Board should not be required to pay petitioner while the proceedings are pending when he is not competent to teach any class available to him. The majority’s decision does just that, however; it compels the School Board to pay a teacher who is not capable of performing any educational services for the district.
We have previously recognized that a School Board could suspend an uncertified teacher without pay in certain instances and that rule should be applied here. Following Jerry (supra), we held that suspension without pay was authorized if the teacher was uncertified in any area because the teacher was "unqualified” under Education Law § 3001 (2); § 3009 (1) (Matter of Meliti v Nyquist, 41 NY2d 183; Matter of Smith v Board of Educ. and Matter of Cutler v Board of Educ., 65 NY2d 797). True, those decisions rested on the Jerry formulation; suspension without pay was warranted because there was statutory authority to support the result. The requirement has been imposed by judicial decision, however, and we should not extend it to cover these facts. There is no principled basis to permit suspension without pay of a teacher not competent to fill any teaching position but forbid suspension without pay of a teacher not competent to fill any teaching position available. I would not, therefore, require respondent to pay petitioner here.
There can be no question about the desirability of reason *12 able rules promoting teachers’ job security. They enable school districts to maintain a stable and experienced staff and help attract competent people to the teaching profession. However, local school authorities possess substantial leeway to administer their affairs and reductions in force have been recognized by the Legislature and this Court as necessary steps to promote efficiency and economy in a school system (see, Education Law § 2510; Matter of Gross v Board of Educ., 78 NY2d 13, supra). The circumstances presented here will recur increasingly and, as it now stands, in these difficult choices involving teacher benefits and fundamental educational concerns, teachers are to be unduly preferred over the efficient use of finite public resources to effectively educate our children.
Because the Court is not compelled to apply the Jerry rule to cases which do not involve allegations of teacher misconduct, and because the majority’s decision extending it to this case seriously constricts a School Board’s ability to manage its affairs efficiently and economically, I vote to affirm.
Chief Judge Wachtler and Judges Kaye and Hancock, Jr., concur with Judge Alexander; Judge Simons dissents and votes to affirm in a separate opinion in which Judges Titone and Bellacosa concur.
Order, insofar as appealed from, reversed, etc.