OPINION
{¶ 1} Defendant-Appellant James Moss appeals from his conviction and sentence for Murder, Aggravated Robbery, Tampering with Evidence, and Having a Weapon Under Disability, all with attached firearm specifications. Moss contends that the trial court should have suppressed his confession, and he claims several instances *Page 2 
of prosecutorial misconduct, as well as ineffective assistance of counsel. Moss also contends that he was prejudiced by cumulative, gruesome photographs and that the trial court erred in ordering $6,140.61 in restitution. We conclude that the confession is admissible; there was no prosecutorial misconduct; and Moss was not denied the effective assistance of trial counsel. We also conclude that the trial court did not abuse its discretion in admitting the photographs or in ordering restitution. Accordingly, we affirm the judgment of the trial court.
 I {¶ 2} At 2:30 one morning in May, 2006, Montgomery County Sheriffs Deputies Feehan and Phillips noticed a white van parked behind an apartment in Northland Village. The van drew their attention because the interior light was on and the passenger door was open. The deputies approached the van and found Timothy Coffman's lifeless body. An autopsy revealed that Coffman had been shot to death late the previous evening. The bullet had entered the right side of Coffman's chest, going through his pulmonary artery, and exiting through his upper left arm. Coffman bled to death as a result of his internal injuries.
 {¶ 3} Deputies found no wallet with Coffman; he had neither identification nor money with him. The van in which he was found was registered to Coffman's employer, who had also issued a cell phone to Coffman. A cell phone cord was located, but no phone was found. The keys to the van were also missing. Deputies found a bullet jacket and core under the front edge of driver's seat, near the door. Timothy Duerr, a firearms expert from the Miami Valley Regional Crime Lab identified the jacket and core *Page 3 
as having come from a 40-caliber, semi-automatic handgun.
 {¶ 4} During the course of the investigation, several suspects were named, including Moss and his friend, Leonard Guy. In September, 2006, Moss's former girlfriend, Annie Bledsoe, told the Dayton police that she had information about the murder of Coffman. She was later contacted by the Montgomery County Sheriffs Department, which was investigating the murder. Bledsoe explained that she had been having an argument with Moss in July or August, 2006 because she did not want his friend Leonard Guy at her apartment. Moss insisted that there was nothing wrong with Guy, and he told her that even though everyone thought that it was Guy who had "shot the white guy in the white van," it had really been Moss himself who had shot Coffman. Moss told Bledsoe that while he and Guy were in the parking lot selling drugs, Coffman grabbed Leonard and tried to take the drugs, so Moss shot him.
 {¶ 5} The following day, Detectives Brad Daugherty and Richard Ward met with Moss, who was incarcerated on an unrelated drug charge. They read him his rights under Miranda v. Arizona (1966), 384 U.S. 436, 10 Ohio Misc. 9, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Moss signed the waiver, agreeing to talk to the detectives. Moss explained that in May, 2006, he, Guy, and two others were using drugs and fleecing people in the Northland Village area, when Guy flagged down the man in the white van and told him to pull around back. The intent was to rob the man in the van. Moss claimed that while standing as look-out, he saw Guy pull out a 9mm gun and point it at the man. After Guy took the man's money, the man spit in Guy's face and called him "nigger," so Guy shot him.
 {¶ 6} Two weeks later, after speaking with other witnesses, the detectives *Page 4 
interviewed Moss again. At that time, Moss admitted to shooting Coffman and taking his money. Moss told detectives that during the confrontation, Coffman grabbed for Moss with his right hand, which was confirmed by forensics finding gunshot residue on Coffman's right hand. Moss also confessed that after the shooting, he disposed of the gun and Coffman's wallet in a lime pit.
 {¶ 7} A grand jury indicted Moss on one count each of Murder, Aggravated Robbery, Tampering with Evidence, and Having a Weapon Under Disability. All charges carried firearm specifications. Moss filed a motion to suppress, which the trial court overruled. Moss waived his right to a jury trial on the Having a Weapon Under Disability charge, and proceeded to trial on the remaining charges. The jury found Moss guilty as charged of Murder, Aggravated Robbery, and Tampering with Evidence, including all specifications. On the same day, the trial court found Moss guilty of Having a Weapon Under Disability. The court sentenced Moss to an aggregate term of 25 years to life and ordered him to pay $6,140.61 in restitution. From his conviction and sentence, Moss appeals.
 II {¶ 8} Moss' First Assignment of Error is as follows:
 {¶ 9} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE GAINED AGAINST APPELLANT IN VIOLATION OF HIS RIGHTS UNDER BOTH THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 10} In his First Assignment of Error, Moss argues that the trial court should have suppressed his confession because it was coerced. When deciding a motion to *Page 5 
suppress evidence, an appellate court is bound to accept the trial court's factual findings if they are supported by competent and credible evidence, and the appellate court must then independently determine as a matter of law if the minimum constitutional standard has been met.State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Because the trial court's finding that Moss's confession was knowingly, intelligently and voluntarily given was supported by competent and credible evidence, the trial court did not err in denying his motion to suppress.
 {¶ 11} Moss primarily claims that his confession was involuntary because the detectives compelled him to confess when they promised to talk to Moss's girlfriend about visiting him in prison. He also complains that his interviews were lengthy; he was incarcerated and not free to leave; and there was more than one detective present during the questioning. However, nothing in the record indicates that any of these factors compelled Moss's confession.
 {¶ 12} The test of whether a suspect's will has been overborne depends upon the particular circumstances of each case. Dickerson v.United States (2000), 530 U.S. 428, 434, 120 S.Ct. 2326. Factors to be considered in evaluating the voluntariness of a confession include the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements. State v. Edwards (1976), 49 Ohio St.2d 31, 41,358 N.E.2d 1051.
 {¶ 13} Moss had ten years of schooling. He was coherent and sober during both interviews; and he was both responsive and cooperative with the detectives. Being incarcerated on an unrelated charge, Moss was no stranger to the criminal justice *Page 6 
system. There is no evidence that the duration or intensity of the questioning was problematic. Moss was questioned twice, with two weeks in between the interviews. Each interview lasted only about ninety minutes, a relatively short period of time for a murder investigation. Moss was read his Miranda rights prior to each interview, and each time he signed the waiver, acknowledging and waiving his rights, agreeing to talk with the detectives. Although Moss chose not to give a written statement, he did agree to a videotaped statement. Moss could not leave the prison, but he was permitted to leave the interview room when he requested a break during the second interview. There was no physical deprivation or mistreatment during either session of questioning.
 {¶ 14} No threats were made during the interviews, and the only possible inducement was the detectives' promise to talk to Moss's girlfriend about visiting him in prison. That promise was elicited upon Moss's initiative, after he asked the detectives to have him transferred to Montgomery County, so that she could visit him. The detectives made no guarantees of success — they only agreed to talk to Moss's girlfriend. The record does not reflect whether the detectives ever discussed visitation with Moss's girlfriend. Even if they failed to follow through, this promise, alone, is not sufficient to render the confession involuntary.
 {¶ 15} Because the record supports the trial court's determination that Moss's confession was knowingly, intelligently, and voluntarily made, his First Assignment of Error is overruled.
 III {¶ 16} Moss' Second Assignment of Error is as follows: *Page 7 
 {¶ 17} "APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS DUE TO PROSECUTORIAL MISCONDUCT AND INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 18} In his Second Assignment of Error, Moss asserts several instances of alleged prosecutorial misconduct. He claims that the State improperly injected emotion during its opening statement and closing argument; that the State improperly offered racial considerations in its closing argument; and that the State improperly invited jurors to make unreasonable inferences from the evidence in regards to the Aggravated Robbery charge. He concludes that he was denied the effective assistance of trial counsel because counsel failed to object to these alleged instances of prosecutorial misconduct. We disagree.
 {¶ 19} When a defendant fails to complain of prosecutorial misconduct in the trial court, he has waived all but plain error. State v.Hartman, 93 Ohio St.3d 274, 294, 2001-Ohio-1580; State v. Ballew,76 Ohio St.3d 244, 254, 1996-Ohio-81. Notice of plain error under Crim. R. 52(B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See, e.g., State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68;State v. Hill, 92 Ohio St.3d 191, 196, 2001-Ohio-274. Plain error should not be invoked unless it can be said that but for the error, the outcome of the trial clearly would have been otherwise. See, e.g., State v.Jackson, 92 Ohio St.3d 436, 438, 2001-Ohio-1266, 751 N.E.2d 946;State v. Sanders, 92 Ohio St.3d 245, 263, 2001-Ohio-189. We find no plain error in this case.
 {¶ 20} During opening statement, the prosecutor stated, "Tim Coffman worked a long, hard day. He left that day driving a work van his employer had let him use. And *Page 8 
this was, in fact, the last day he ever spoke to his friends, the last day he ever got to see his family, because on this day the defendant robbed, shot, and killed Tim Coffman and later admitted to doing it." Similarly, in closing argument, the prosecutor stated, "On May 17th of 2006, Timothy Coffman went to work. He worked a long, hard day and left around 9:00 o'clock p.m. * * * Little did he know that this would be the last day he ever got to see his family, the last day he ever got to speak to his friends." Moss insists that these statements improperly injected emotion into the jury's deliberations. We conclude that these statements, which are unremarkable in the context of a murder prosecution, are within the permissible range for a prosecutor to use in summarizing evidence-evidence that Coffman was in no way at fault in the events leading to his being killed.
 {¶ 21} Moss further claims that the prosecutor improperly introduced racial considerations by saying during opening statement, "He was in fact the person who pulled the trigger and shot the individual who he described in his own words as the white guy in the white van * * * ." A similar reference was made during closing argument, when referring to Bledsoe's testimony. However, the prosecutor was merely repeating Moss's own words. In fact, the prosecutor specifically pointed out these were Moss's own words. This was particularly relevant because at trial Moss denied any involvement in the crime.
 {¶ 22} Finally, Moss maintains that, despite the fact that the evidence did not support the conclusions, the prosecutor argued that Moss had taken the key to the van and implied that he had taken a cell phone from the van, thus inviting the jurors to use that evidence against him on the Aggravated Robbery charge. This is not an accurate characterization of the State's arguments. The prosecutor clearly told the jury during *Page 9 
opening statement that Moss was not charged with taking the key or the phone and that the Aggravated Robbery charge arose from Moss's admission that he had taken Coffman's money. The statement that the key and phone were missing was an accurate representation of the facts. It may imply that Moss or an accomplice took the items, but this is a conclusion that a reasonable factfinder could infer from the evidence.
 {¶ 23} In evaluating a claim of prosecutorial misconduct, this court must consider "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."State v. Hartman, 93 Ohio St.3d 274, 295, 2001-Ohio-1580, citations omitted. We conclude that the prosecutor's statements were neither improper nor prejudicial. They are fair statements of the evidence as portrayed by the record. Moreover, the statements were not "so inflammatory as to render the jury's decision a product solely of passion and prejudice." State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906. Therefore, counsel could not have been ineffective for electing not to object to these statements. Moss's Second Assignment of Error is overruled.
 IV {¶ 24} Moss's Third Assignment of Error is as follows:
 {¶ 25} "APPELLANT WAS UNFAIRLY PREJUDICED THROUGH THE ADMISSION OF GRUESOME, REPETITIVE, AND PREJUDICIAL PHOTOGRAPHS."
 {¶ 26} In his Third Assignment of Error, Moss insists that State's exhibits 1, 2, 4, and 5 are inflammatory, prejudicial, and duplicative, and that one or more of those photos is gory. He also contends that State's exhibits 18-34 are duplicative of a *Page 10 
videotape introduced by the State and that State's exhibits 26-30 are cumulative and display blood. He asserts that the trial court erred when it overruled his objection to the admission of these photographs.
 {¶ 27} Under Evid. R. 403, the admission of photographs is left to the sound discretion of the trial court. State v. Maurer (1984),15 Ohio St.3d 239, 264, 473 N.E.2d 768, cert. denied (1985), 472 U.S. 1012,105 S.Ct. 2714. An abuse of discretion connotes an attitude by the court that is arbitrary, unconscionable, or unreasonable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. We conclude that the contested photographs are both relevant and probative and that the trial court did not abuse its broad discretion in allowing them in evidence.
 {¶ 28} It is to be expected that most photographs of a murder victim will depict blood and will be gruesome by their very nature. For that reason, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible." State v. Maurer
(1984), 15 Ohio St.3d 239, 264-65, 473 N.E.2d 768, citing State v.Woodards (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568. "Non-repetitive photographs. . ., even if gruesome, are admissible if the probative value of each photograph outweighs the danger of material prejudice to the accused." State v. Jalowiec, 91 Ohio St.3d 220, 229, 2001-Ohio-26.
 {¶ 29} In this case, the contested photographs illustrate the coroner's testimony as well as that of the deputies who found Coffman's body and investigated the scene. The photos helped the jury understand how Coffman was killed. Most of the photos that Moss argues are repetitive are not, in fact, repetitive. Some show views from different perspectives, and others are close ups. As for the photographs taken from the *Page 11 
videotape, the deputy explained that the videotape was very dark, and the photographs are lighter and easier to see. Taken as a whole, the photos are not unduly repetitive.
 {¶ 30} The photographs in this case are not so horrendous as to prejudice Moss's right to a fair trial. Because the trial court did not abuse its discretion in admitting the photographs in evidence, Moss's Third Assignment of Error is overruled.
 V {¶ 31} Moss' Fourth Assignment of Error is as follows:
 {¶ 32} "APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER BOTH THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 33} In his Fourth Assignment of Error, Moss argues that trial counsel was ineffective in that he failed to argue that the shooting was accidental, and he failed to request an instruction on accident. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id. We conclude that Moss's trial counsel's representation was not deficient.
 {¶ 34} Moss maintains that trial counsel should have argued that the shooting was an accident and that counsel should have requested an instruction on accident. However, at trial Moss's counsel argued that there was no physical evidence to link *Page 12 
Moss to the crimes. He discounted the confession as coerced, and he dismissed Bledsoe's testimony as the unreliable claim of a jilted girlfriend. This strategy was sound, and it stands in direct conflict with a claim of accident.
 {¶ 35} The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not a basis of a finding of ineffective assistance of counsel. State v. Murphy,91 Ohio St.3d 516, 524, 2001-Ohio-112; State v. Dixon, 101 Ohio St.3d 328,2004-Ohio-1585, ¶ 52. Moss's trial counsel was not ineffective for electing not to offer contradictory defenses to the jury. His Fourth Assignment of Error is overruled.
 VI {¶ 36} Moss' Fifth Assignment of Error is as follows:
 {¶ 37} "THE TRIAL COURT ERRED IN IMPOSING RESTITUTION IN AN EXCESSIVE AMOUNT, WITHOUT A HEARING, AND IN AN AMOUNT THAT DID NOT RESULT FROM THE CRIMINAL ACTS FOR WHICH APPELLANT WAS CONVICTED."
 {¶ 38} In his Fifth Assignment of Error, Moss contends that the amount of restitution ordered is excessive, and that no restitution should have been ordered without a hearing. We disagree.
 {¶ 39} Revised Code Section 2929.18(A)(1) authorizes a trial court to order an offender to pay restitution to a victim or to the victim's survivor, in an amount based on the victim's economic loss. Among other sources, the amount of restitution may be determined by the pre-sentence investigation report. Id. "If the court decides to impose *Page 13 
restitution, the court shall hold a hearing on restitution if theoffender, victim, or survivor disputes the amount." Id., emphasis added.
 {¶ 40} In this case the pre-sentence investigation report states that $6,140.61 was owed to Coffman's family for funeral expenses. Contrary to Moss's claim, there is no evidence that restitution was ordered either for the missing cell phone or for the van key. Funeral expenses bear a reasonable relationship to the actual loss suffered by Moss's family, and the amount was not excessive. Furthermore, Moss was aware of this recommendation prior to his sentencing, but he chose not to contest either the order of restitution or the amount. Therefore, no hearing was necessary.
 {¶ 41} Moss's Fifth Assignment of Error is overruled.
 VII {¶ 42} All of Moss's assignments of error having been overruled, the judgment of the trial court is Affirmed.
DONOVAN, J., concurs