[Cite as *State v. Williams*, 2012-Ohio-4179.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

STATE OF OHIO  :
: Appellate Case No. 24548
Plaintiff-Appellee  :
: Trial Court No. 2009-CR-4183/1
v.  :
:
KELLY D. WILLIAMS  : (Criminal Appeal from
: Common Pleas Court)
Defendant-Appellant  :
:
. . . . . . . . . . .

## O P I N I O N

Rendered on the 14th day of September, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ANTHONY S. VANNOY, Atty. Reg. #0067052, 130 West Second Street, Suite 1600, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WILLAMOWSKI, J. (Sitting by Assignment)

{¶ 1}    Defendant-Appellant, Kelly D. Williams ("Williams"), appeals the judgment

of the Montgomery County Court of Common Pleas after a jury trial finding Williams guilty

of murder, aggravated robbery, and felonious assault, as well as accompanying firearms specifications. On appeal, Williams contends that the trial court erred and he was deprived of a fair trial because he was denied his constitutional right to effective assistance of counsel; the trial court erred in admitting gruesome photographs and other inadmissible documents; the trial court failed to investigate his claims that his counsel's performance was unsatisfactory; and he was deprived of a fair trial due to prosecutorial misconduct. For the reasons set forth below, the judgment is affirmed.

{¶ 2} On August 31, 2010, the Montgomery County Grand Jury indicted Williams on two counts of Murder, two counts of Aggravated Robbery and two counts of Felonious Assault, all with attendant firearm specifications. These charges arose out of the January 23, 2009 murder and armed robbery of 24-year-old Demetrius Frazier ("Frazier" or "the victim"). The victim was conned into believing he would be buying marijuana from an old friend, Deon Pinson ("Pinson"). Instead, Frazier was robbed and shot. Williams, Pinson, and Demar Maxwell ("Maxwell") were all implicated in the robbery and murder.

{¶ 3} Williams filed a number of pre-trial motions. Relevant to this appeal was a motion filed pursuant to Crim.R. 15 to depose a potential witness, Rodriguez Noel. (Docket #31) The trial court denied the motion after finding that Williams had failed to satisfy the necessary requirement of showing that Noel would likely be unavailable to testify at trial. (Docket #52).

{¶ 4} The second pre-trial motion that was relevant to this appeal was filed by Williams, pro se, asking for the dismissal of his counsel. (Docket #44) The trial court held a hearing on the motion on January 18, 2011, at which time Williams was given an opportunity

to state the reasons why he was dissatisfied with his court-appointed attorney. Williams explained at the hearing that he did not feel that his counsel was necessarily doing a poor job, but that there were things he wanted his counsel to do that had not been done. (1/18/11 Tr. 2-3, 5-6) However, at the conclusion of the hearing, Williams informed the court that he wished to keep his attorney after all. (1/18/11 Tr. 4-6) The trial court formally overruled the motion by Entry filed January 25, 2011.

{¶ 5} On February 11, 2011, after twenty-one witnesses over four days of trial, the jury found Williams guilty as charged. During the trial, the State offered the testimony of numerous witnesses, including many of the Dayton police officers and detectives that were first responders at the crime scene and/or were involved in the investigation of the murder; police laboratory personnel; the Montgomery County Coroner; cell phone records custodians; and the victim's mother.

{¶ 6} The State's most incriminating testimony came from Pinson, who had accepted a plea agreement allowing him to plead guilty to lesser offenses in exchange for his agreement to appear and testify truthfully in any court proceedings. (Tr. 279-280) Pinson was serving a nine-year sentence for involuntary manslaughter, aggravated robbery, and one gun specification. (Tr. 279).

{¶ 7} Pinson testified in detail as to the events that happened on January 23, 2009, and thereafter. (Tr. 278-338) Pinson testified that Frazier called him, wanting to buy some marijuana. While Pinson was in the process of trying to locate the amount needed, Williams called Pinson and indicated he needed a way of getting money and asked if Pinson knew how he could "hit a lick" (commit a robbery) or "flip some drugs." (Tr. 287-88). Pinson

suggested that they stage a robbery whereby Pinson would meet with Frazier under the guise of selling him the marijuana, but then Williams would show up and pretend to rob Pinson while actually robbing Frazier. However, Williams was unable to obtain a gun, so he arranged for another friend who had a gun, Maxwell, to contact Pinson and carry out the planned robbery for him. All went according to plan until at some point, while Maxwell was brandishing his gun at Pinson and Frazier, "everything went bad" and the situation got out of control. (Tr. 312) Pinson threw his money at Maxwell, got out of the car and ran. Shortly thereafter, Pinson heard the gunshots. Pinson further testified about what he did next, what he told police when he came upon Frazier's body at the crime scene, how he tried to cover up what happened by claiming he and Frazier had been car-jacked by a stranger, and about what ensued in the following months during the investigation. (Tr. 278-338).

{¶ 8} The State also offered numerous exhibits into evidence including, 9-1-1 tapes; photographs of the crime scene, the victim, and the vehicle; and various types of DNA, ballistic, and other forensic evidence. Also admitted were detailed cell phone records of Williams, Pinson, and Maxwell (Exhibits 72, 74, 103) indicating that Williams and Pinson had called each other a multitude of times on the day of the murder, both before and after, and there were also calls to and from Maxwell, the victim, various friends/family members of the victim (while Pinson was trying to find him to ascertain whether he had been shot). Detective Gregory Gaier testified extensively as to his lengthy investigation of the case, and how he was able to use the evidence they discovered in conjunction with what he learned from his interviews and investigations to eventually learn that Williams, Pinson, and Maxwell were responsible for Frazier's murder. (Tr. 355-425).

**{¶ 9}**     For the defense, Williams' brother and two of Williams' friends testified as alibi witnesses.   They all claimed that they had all been partying with Williams at his apartment the entire evening of the murder, and that he had never left the premises.  (Tr. 549-568).

**{¶ 10}**   Maxwell also testified for the defense after being warned that anything he said could be used against him at his own trial for the murder, which was scheduled to take place two weeks later.  (Tr. 481-544)   Maxwell indicated that he didn't care and didn't have anything to lose, as he was already serving a sentence of 37-years-to-life for an unrelated aggravated murder and several other felonies. (Tr. 492)   Maxwell denied that he had killed Frazier, or that he was in any way involved in the robbery transaction that occurred.   (Tr. 540)  He also testified that Williams had never asked him to commit a robbery, assault, or murder involving Pinson and Frazier.  (*Id.*).   Maxwell acknowledged that he had previously given a statement to police implicating Williams, but stated that he wasn't telling the truth at that time, but was merely trying to "retaliate" because he believed at that time that Williams was the person who had "set him up" as the one doing the crime.  (Tr. 493, 530, 533-534).   He later learned that Pinson was the one who "snitched," so he no longer wanted to get "revenge" on Williams.  *Id.*

**{¶ 11}**    On cross-examination, the State confronted Maxwell with the fact that he had lied repeatedly to the police and that his testimony at trial was the *seventh* different version of events that he had given.  (Tr. 510, 529-534).   The State challenged Maxwell with the ever-changing versions he had given in his other statements to the police.  (*Id.*)   The State also questioned the motive behind Maxwell's testimony with a letter he had written to

Williams wherein he told his friend that he would "help you get free." (Tr. 492) The letter indicated that since Maxwell was in prison for life anyway, he might as well try to help Williams, since Williams had "looked out for [Maxwell] a few times." (*Id.*)

{¶ 12} After closing arguments, the trial court gave the jury instructions, including instructions pertaining to an "aider and abettor" acting in complicity. The jury found Williams guilty on all counts.

{¶ 13} On March 8, 2011, Williams appeared for sentencing. After taking into consideration the offenses which were subject to merger, the trial court sentenced Williams to an aggregate sentence of 26 years to life in prison.

{¶ 14} The Termination Entry was filed on March 11, 2011. It is from this judgment that Williams now appeals, raising the following assignments of error for our review.

**First Assignment of Error**

WILLIAMS WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

**Second Assignment of Error**

[WILLIAMS] WAS DENIED A FAIR TRIAL THROUGH THE TRIAL COURT'S ADMISSION OF GRUESOME PHOTOGRAPHS.

**Third Assignment of Error**

THE TRIAL COURT DENIED [WILLIAMS] HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL THROUGH ITS FAILURE TO INVESTIGATE [WILLIAMS'] CLAIM THAT HIS COUNSEL'S PERFORMANCE WAS UNSATISFACTORY.

**Fourth Assignment of Error**

[WILLIAMS] WAS DEPRIVED OF A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT.

{¶ 15}    In addition to the four assignments of error set forth in his original appellate brief, Williams has also raised two supplemental assignments of error, filed four months after the original appellate brief.

**Supplemental Assignment of Error One**
**[Fifth Assignment of Error]**

[WILLIAMS] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH COUNSEL'S FAILURE TO OBJECT [TO] INADMISSIBLE EVIDENCE.

**Supplemental Assignment of Error Two**
**[Sixth Assignment of Error]**

[WILLIAMS'] RIGHTS TO DUE PROCESS, CONFRONTATION, AND A FAIR TRIAL WERE COMPROMISED THROUGH IMPROPER ADMISSION OF THE SEARCH WARRANT AFFIDAVIT AND THE COURT'S ENTRY AND ORDER FINDING PROBABLE CAUSE.

{¶ 16}    Several of Williams' assignments of error deal with similar and overlapping issues.  Therefore, in order to facilitate our review, we shall combine some of the assignments of error and address them out of order.

*First, Third, Fifth Assignments of Error – Ineffective Assistance of Counsel*

{¶ 17}    Three of Williams' assignments of error, the first, third, and fifth, deal with the issue of alleged ineffective assistance of counsel.  To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, namely, performance

falling below an objective standard of reasonable representation, and (2) prejudice – a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that strategy and tactical decisions exercised by defense counsel are well within the range of professionally reasonable judgment and need not be analyzed by a reviewing court. *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, 878 N.E.2d 694, ¶ 73 (2d Dist.).

{¶ 18} In his first assignment of error, Williams argues that his counsel provided ineffective assistance for failing to "research the law and properly support his motion for the deposition of an unavailable witness." William's attorney filed a motion, pursuant to Crim.R. 15, asking the court for an order allowing a deposition to be taken of Rodriguez Noel.[1] (12/20/10 Motion for a Deposition, Docket #31). The motion alleged that Noel was "a necessary and essential witness with material information," and "that the deposition [was] necessary to facilitate discoverable information which will lead to relevant and material evidence to be used at trial." (*Id.*). The trial court overruled the motion, because Crim.R. 15(A) requires a showing that a prospective witness is unavailable or prevented from attending trial, and the trial court found that the motion failed to state "with specificity the reasons [Williams] believed that the witness will not show at trial, i.e., what attempts have been made

---

[1] The motion indicated that "The State of Ohio has included gun specifications in the charges since the victim was allegedly killed by a .38 caliber weapon that was owned and/or possessed by [Williams] after acquiring it from an individual named Rodriguez Noel." (12/20/10 Motion for a Deposition, Doc. #31).

to find the witness, what the witness has said about coming to court, etc."   (2/11/11 Decision, Docket #52)   Therefore, Williams contends that his counsel was ineffective in failing to file an adequate motion and in failing to correct this "error."

{¶ 19}   In setting forth his argument, Williams asks us to make the assumption that that Noel was truly unavailable, that there was a valid reason why a Crim.R. 15 deposition was the only option available, and that the trial court would have allowed the deposition if his counsel had written a better motion.   There is nothing in the record that would support any of those assumptions and Williams has not offered any argument or factual basis to indicate that those claims have any validity.   Perhaps the reason his counsel did not, as Williams argues, "support his motion with facts" to support Noel's unavailability, is because none existed. From this record, it is impossible to determine.   Furthermore, from the wording of the memorandum in support of the motion for a deposition, it appears that the true intent for wanting to depose Noel was not because counsel feared Noel would be unavailable for trial, but because he wished to use the deposition as a discovery tool.   And, while depositions are not a method for obtaining discovery in criminal cases, counsel's attempt to utilize a deposition as such does not, by itself, render counsel's representation constitutionally deficient.   Williams has not shown that his counsel's performance fell below an objective standard of reasonable representation.

{¶ 20}   Additionally, even if we were to assume that counsel's performance was professionally unreasonable, an error by counsel does not warrant setting aside a criminal conviction if the error had no effect on the judgment.   To warrant reversal, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Bradley* at 142; *Strickland* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, a court making the prejudice inquiry must find that the defendant has met his burden of showing that it is reasonably likely that the jury's verdict would have been different absent counsel's alleged error. *Bradley* at 143, citing *Strickland* at 695-696.

{¶ 21} Williams has failed to show how he was prejudiced by counsel's deficient performance, i.e., Williams has not met his burden of showing that, but for his counsel's alleged errors, the motion for a deposition would have been granted; that the deposition would have taken place; and, that Noel's testimony during the deposition would likely have changed the jury's verdict. From the record, there is no way of knowing what relevant information Noel had about this case, or what Noel would have testified to if deposed and/or called as a witness at trial. The little information about Noel in the record came about during the testimony of Maxwell when Maxwell testified that he knew Williams and Pinson were looking for a gun, and that he told Williams he'd help him get a gun from Noel. (Tr. 506-508) If Noel's testimony was consistent with what is in the record, Noel's testimony would have further hurt, rather than helped, Williams' defense.

{¶ 22} There is nothing in the record to substantiate Williams' claim of ineffective assistance of counsel concerning his allegations in reference to the pre-trial motion for a deposition. The first assignment of error is overruled.

{¶ 23} In the third assignment of error, Williams complains that the trial court failed to make a proper inquiry and investigation into his allegations of his complaints against his attorney. On January 13, 2011, Williams filed a pro se motion entitled "Motion for Dismissal

of Counsel," in which he suggested that his attorney was ineffective because "[f]ailure to raise a relevant statutory defense is clearly constitutional ineffective assistance of counsel" and because his counsel had not filed a "motion for identification" that Williams had asked his counsel to file. Williams argues that the trial court should have conducted a thorough investigation of the complaints, but that appellate counsel "has found no hearing record on this matter." (Appellant's Brief, p. 3).

{¶ 24} However, the record shows that the trial court *did* conduct a hearing on the motion on January 18, 2011, and Williams was given an opportunity to explain why he felt his attorney was not providing proper representation. Williams explained to the court that he did not feel that his attorney was necessarily doing a poor job, but that there were things he wanted his counsel to do, which he had not done. (1/18/11 Tr. 2-3, 5-6) After the trial court explained to Williams the extent to which his counsel had been working on his case (the court told Williams that his counsel had been "papering me to death" with pre-trial motions), Williams informed the court that he wished to keep his attorney and proceed to Trial. (1/18/11 Tr. 6).

{¶ 25} Being an indigent defendant, Williams was not entitled to the attorney of his choice at state expense, but rather was entitled to competent, effective representation from the lawyer appointed by the court. *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 11 (1st Dist.). To discharge court-appointed counsel, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." (Internal citations omitted.) *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.

{¶ 26}   We find Williams' arguments concerning this issue to be without merit because the trial court did seriously investigate Williams' complaints and held a hearing on the matter; there was no evidence of any incompetence, ineffectiveness, or any significant breakdown in the attorney-client relationship; and, most importantly, Williams himself decided that he wanted to continue with his appointed counsel.

{¶ 27}   As a second part of this third assignment of error, Williams contends that several aspects of his counsel's trial performance "reveal reasons to be suspicious about his attorney's preparation and effectiveness." (Appellant's Brief, p. 4) Williams complains that his counsel offered no opening statement; that he did not cross-examine many of the witnesses, and conducted "very brief and ineffective" cross-examinations of other witnesses; that he failed to request a jury instruction concerning the evaluation of a co-conspirator's testimony; and that he permitted the admission of damaging material through the leading questions of the prosecutor. (*Id.*).

{¶ 28}   A defendant must overcome the presumption that counsel is competent and must show that counsel's decisions were "not trial strategies prompted by reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 687. "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 101. The failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel and may be justified as a tactical decision. *State v. Gumm*, 73 Ohio St.3d 413, 428, 1995-Ohio-24, 653 N.E.2d 253. Even

unsuccessful tactical or strategic decisions will not constitute ineffective assistance of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965.

{¶ 29}    All of the above complaints raised by Williams fall under the category of an attorney's "trial strategy," and do not constitute a basis for a claim of ineffective assistance of counsel, absent egregious error.   Furthermore, a review of the record demonstrates that there was a very sound basis for many of counsel's strategic decisions.   For example, many of the State's witnesses were police and paramedic first responders, or other investigators, who merely provided a foundation of basic facts for the State's case, i.e., time and location of the victim's death, cause of death, information as to what was found at the scene, etc.   None of that testimony implicated Williams in any way, so there was nothing relevant to Williams' defense on which to cross-examine these witnesses.   There was no reason to prolong testimony about how the unfortunate victim had desperately tried to find help before he finally succumbed to horrible injuries and died a terrible death.   Williams' counsel appropriately cross-examined all of the witness that offered testimony relative to his guilt or innocence.

{¶ 30}    And, his contention that his counsel was somehow ineffective for not requesting a jury instruction on a co-conspirator's testimony is belied by the record, which shows that such an instruction was given.  (Tr. 630-631)   Also, his claim that counsel was ineffective for not objecting to the prosecutor's leading questions of Maxwell is also meritless since the questions arose when the prosecutor was cross-examining Maxwell, when leading questions are permitted.

{¶ 31}    And finally, regardless of whether Williams' "suspicions" of counsel's performance are valid, Williams has not shown that he was prejudiced by counsel's tactics or

that there was a reasonable likelihood that the jury's verdict would have been different had counsel done, or not done, the things Williams sets out in this assignment of error. Williams' third assignment of error is overruled.

{¶ 32} In Williams' First Supplemental Assignment of Error ("Fifth Assignment of Error"), he asserts that his counsel was ineffective for failing to object to the admission of certain court documents that were apparently inadvertently submitted to the jury along with Exhibits 72, 74, and 103, which were the cell phone records belonging to Williams, Maxwell and Pinson. In addition to the call detail records themselves, each of the exhibits included a copy of the Order and Entry granting the detective's request to obtain the records. (*Id.*) Also included as part of State's Exhibit 72 (Pinson's cell phone records) and State's Exhibit 103 (Maxwell's cell phone records), was a copy of Detective Gaier's Application requesting the records.

{¶ 33} As stated above, to prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington, supra*, 466 U.S. 668. To meet this burden under the prejudice prong, Williams must show that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Bradley*, 42 Ohio St.3d at 142. Here, Williams fails to meet that burden.

{¶ 34} None of the information contained with the Applications and Orders and Entries for the cellphone records was anything new. The jury was already aware that Detective Gaier had obtained court orders for three sets of cell phone records: (1) Pinson's cell phone records; (2) the cell phone records of the person Pinson claimed he called to

arrange the deal; and (3) the records for the number Pinson had continuously called both before and after the killing occurred. (Tr. 362-364, 371, 413) The jury was also already aware, through Pinson's testimony and the cell phone records themselves, that Pinson and Williams exchanged phone calls throughout the day leading up to the robbery and shooting. (Tr. 285-291, 309-312, 372-382) And, the jury was also already aware, through Pinson's and Detective Gaier's testimony, that Pinson had given the police the phone number of the person he had called to set-up the drug deal-turned-robbery. (Tr. 315, 361, 370).

{¶ 35} Consequently, any information gleaned from the Applications and Orders and Entries was already known by the jury before it reviewed the exhibits during its deliberations. Therefore, the prejudicial impact, if any, of including the administrative paperwork along with the exhibits was minimal, at the most.

{¶ 36} Because Williams fails to show that the outcome of the trial would likely have been different had his counsel objected to the applications for cellphone records and the orders and entries granting the applications being included as part of the record submitted to the jury, Williams' claim of ineffective assistance of counsel cannot be sustained. His first supplemental/fifth assignment of error is overruled.

### Sixth Assignment of Error – Rights Violated Due to Improper Admission

{¶ 37} In his Second Supplemental Assignment of Error ("Sixth Assignment of Error"), Williams argues that, even without an objection, the trial court on its own should have excluded from evidence the detective's Application for the phone records and the Entries and Orders granting the Applications that were attached to the cell phone records exhibits discussed above. Williams contends that the trial court's findings of "probable cause" in its

Orders amounted to "unfairly and impermissibly bolster[ing] the credibility of the State's witnesses" and amounted to a suggestion by the trial court that "Williams' guilt was a pre-determined fact."    (Appellant's Supplemental Brief, p. 9).

**{¶ 38}**    Because Williams failed to object to the admission of this evidence, he has waived all but plain error. *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶ 19 (2d Dist.).   Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different.  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108.   To constitute plain error, the error must be obvious on the record, palpable, and fundamental.  *State v. Stevens*, 2d Dist. Montgomery No. 10203, 1988 WL 4341 (Jan. 15, 1988), at *2.   Notice of plain error, therefore, "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Lang*, supra, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.

**{¶ 39}**    As we discussed above in our response to the second supplemental/fifth assignment of error, the improper admission of the Applications and Orders and Entries amounted to a harmless error because all of the information was already before the jury through the testimony of the various witnesses.   Merely having documents before the jury indicating that obtaining the cell phone records would be of some assistance to the police, is not prejudicial. There was no evidence that this apparently inadvertent error, which was not noticed by the trial court, the State, or defense counsel,[2] would have changed the outcome of the trial.

---

[2]  Nor by appellate counsel, either, necessitating the submission of a supplement to the original brief.

**{¶ 40}** Nor do we find any merit in Williams' contention that the Order finding that there was "probable cause" to allow the detective to obtain the cell phone records somehow amounted to the trial court suggesting that Williams' guilt was a pre-determined fact. The fact that there was "probable cause" that certain records might contain some evidence of guilt was not a finding by the trial court that Williams was guilty. The trial court clearly informed the jurors as to what constituted evidence in the case, and the fact that Williams "is presumed innocent until his guilt is established beyond a reasonable doubt." (Tr. 625).

**{¶ 41}** The trial court also instructed the jury that:

If, during the course of the trial, the Court, and by this I mean myself, the bailiff, the judicial assistant, the staff attorney or anyone associated with the court, said or did anything you consider an indication of their or the court's view on the facts, you are instructed to disregard it.

The Court must be, and we sincerely try to be, impartial in presiding over this and every other trial. We do not have the right and do not desire to invade the province of the jury by indicating in any way a preference between the State and the Defendant, and we have not done so at any time.

(Tr. 661-662) These jury instructions clearly instructed the members of the jury that the trial court did not have any view on Williams' guilt or innocence and they were to disregard anything that might suggest otherwise. "A trial jury is presumed to follow the instructions given to it by the judge." *Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, ¶ 18; *State v. Brown*, 2d Dist. Montgomery No. 24420, 2012-Ohio-416, ¶ 36 ("a jury will

normally be presumed to follow an instruction to disregard inadmissible evidence inadvertently presented to it * * *").

{¶ 42} Williams has not provided any evidence that the inclusion of the administrative paperwork accompanying the cell phone records was prejudicial and would have changed the outcome of the trial. The information contained in those documents was already before the trial court and was cumulative. Williams' second supplemental/sixth assignment of error is overruled.

### *Second Assignment of Error – Prejudicial Admission of Photographs*

{¶ 43} In this assignment of error, Williams maintains that the trial court denied him a fair trial by admitting into evidence certain photographs that he alleges are "gruesome." Williams specifically objects to the admission of State's Exhibits 12-13, 15-18, 78-79, 85-86, and 92, claiming that their probative value was outweighed by the danger of unfair prejudice. He cites to the Ohio Supreme Court's decision in *State v. Morales*, 32 Ohio St.3d 252, 259, 513 N.E.2d 267 (1987), cautioning against the use of "excessive photographic evidence" that would be "cumulative, repetitious and prejudicial." (Appellant's Brief, p. 2).

{¶ 44} The admission or exclusion of photographs is governed by Evid.R. 403(A) which provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." This rule "manifests a definite bias in favor of the admission of relevant evidence, as the dangers associated with the potentially inflammatory nature of the evidence must *substantially outweigh* its probative value before the court should reject its

admission." (Emphasis added.) *State v. White*, 4th Dist. Scioto No. 03CA 2926, 2004-Ohio-6005, ¶ 50.

**{¶ 45}** For that reason, "[w]hen determining whether the relevance of evidence is outweighed by its prejudicial effects, the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission." *State v. Lakes*, 2d Dist. Montgomery No. 21490, 2007-Ohio-325, ¶ 22. In addition, "the decision to either admit or exclude relevant photos is committed to the sound discretion of the trial court," and "an appellate court will not disturb a trial court's ruling on the admissibility of photos absent an abuse of discretion." *Id*. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). It involves views or actions "that no conscientious judge, acting intelligently, could honestly have taken." (Internal citations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 129-130.

**{¶ 46}** The Supreme Court of Ohio has held that "the mere fact that [a photograph] is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." *State v. Frazier*, 61 Ohio St.3d 247, 252, 574 N.E.2d 438 (1991), quoting *State v. Woodards*, 6 Ohio St.2d 14, 25, 215 N.E.2d 568 (1966). Such photographs may help illustrate witness testimony and forensic evidence, or show the nature and circumstances of the crime. *See State v. Jalowiec*, 91 Ohio St.3d 220, 230, 2001-Ohio-26, 744 N.E.2d 163. "It is to be expected that most photographs of a murder victim will depict blood and will be gruesome by their very nature." *State v. Moss*, 2d Dist. Montgomery No. 22496, 2008-Ohio-6969, ¶ 28.

{¶ 47}    Furthermore, Williams appears to erroneously base his argument upon the standard that is used in *capital* cases (*see* Williams' citations to *Morales*), where a stricter evidentiary standard for gruesome photographs exists.   *See Frazier*, supra.   "To be admissible in a *capital* case, the probative value of each photograph must outweigh the danger of prejudice to the defendant *and, additionally, not be repetitive or cumulative in nature*." (Emphasis added.)   *State v. Morales*, 32 Ohio St.3d at 259.

{¶ 48}    The photographs in this case that Williams objected to show the victim's body at the location where he died, they show the body from various angles to indicate where the gunshot wounds occurred, and they served to illustrate some of the coroner's testimony. Obviously, some of the photos were gruesome and showed a considerable amount of blood, since they depicted a gunshot murder victim.   *See Moss*, supra.   However, we do not find that there was an excessive number of these photographs, and they were relevant in helping to illustrate the testimony of several of the witnesses regarding the position of the body and the nature and cause of death.   The trial court considered the defense's objections carefully, questioned the State as to the relevance and purpose of each challenged photograph, and sometimes required the State to eliminate one or another photograph in order to avoid unnecessary repetition.   (Tr. 456-470)   In fact, not all of the photographs complained of in this appeal were actually admitted.

{¶ 49}    The photographs that were admitted were limited in number, were not repetitive, and had probative value and relevance that was not substantially outweighed by the danger of unfair prejudice to Williams.   We do not find that the trial court abused its discretion in admitting the photographs into evidence, especially in consideration of the

application of Evid.R. 403 in non-capital cases. Williams' second assignment of error is overruled.

### Fourth Assignment of Error -- Prosecutorial Misconduct

{¶ 50}    Williams contends that his right to a fair trial was violated by prosecutorial misconduct when, during the cross-examination of Demar Maxwell, the prosecutor accused Maxwell of lying. Specifically, Williams objects to the following exchange that occurred between the prosecutor and Maxwell:

> MAXWELL:  The problem was I was lying to your detective because your detective tried to manipulate me. So, I enjoyed myself while he tried to question me.
>
> PROSECUTOR:  No, no, sir. The problem is you lied to this jury and you're lying to this jury now. And every time another piece of evidence comes out to prove your lies, you make up another lie. Isn't that true? Isn't that how you work?

(Tr. 529). Williams claims that the prosecutor's question strongly implied that it was the prosecutor's opinion that Maxwell was lying, which was improper because a prosecutor's remarks might carry great weight with the jurors because of his position as an officer of the court.

{¶ 51}    The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." *State v. Jones*, 90 Ohio St.3d 403, 420,

2000-Ohio-187, 739 N.E.2d 300. Prosecutorial misconduct cannot be made a ground for reversible error unless, in view of the entire case, the conduct was so egregious as to deny the defendant a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987).

**{¶ 52}** Because Williams' counsel did not object at trial to the alleged misconduct about which he now complains, he waives all but plain error. *See State v. Smith*, 80 Ohio St.3d 89, 110, 1997-Ohio-355, 684 N.E.2d 668. As stated above in our discussion of the sixth assignment of error, an alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108.

**{¶ 53}** In our review of the record, we do not find any error or misconduct on the part of the prosecutor, and certainly not plain error. The cases that Williams cites for the proposition that it is improper for a prosecutor to express "a personal belief or opinion as to the credibility of a witness" were referring to a prosecutor's improper remarks in interpreting the evidence and usurping the jurors' role of assessing credibility, that were made *during closing arguments*. *See* Appellant's Brief, p. 5, quoting/citing *State v. Givens*, 12th Dist. Butler Nos. CA2009-05-145, CA2009-05-146, 2010-Ohio-5527; *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 20; and *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "Prosecutors have wide latitude in cross-examining witnesses, subject to the trial court's discretion." *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 22, citing *State v. Garfield*, 34 Ohio App.3d 300, 303, 578 N.E.2d 568 (11th Dist.1986).

**{¶ 54}** The statements made by the prosecutor during his cross-examination of

Maxwell were not in the context of telling the jury who and what they should believe, but they were in the context of confronting Maxwell himself with his admitted lies. Here, the prosecutor was *questioning* Maxwell concerning his truthfulness, asking, "[a]nd every time another piece of evidence comes out to prove your lies, you make up another lie. Isn't that true? Isn't that how you work?" Maxwell then replied, "No." It was up to the jury to decide who to believe. The prosecutor's question sought information relevant to the witness's credibility. *See State v. D'Ambrosio*, 67 Ohio St.3d 185, 193, 1993-Ohio-170, 616 N.E.2d 909; *State v. Slagle*, 65 Ohio St.3d 597, 606, 605 N.E.2d 916 (1992) (during cross-examination, the prosecutor was merely aggressively questioning the witness about his honesty and his intent).

{¶ 55} Prior to the challenged exchange between the prosecutor and Maxwell, Maxwell had already acknowledged that, on multiple occasions, he lied to the police both orally and in writing. (Tr. 490, 505-506, 524, 526-529) In fact, Maxwell acknowledged that he had told the police six different stories about what had happened on the night Frazier was killed, and that the version he told the jury on direct examination was story number seven. (Tr. 490-491) Maxwell also changed his story several more times throughout his cross-examination. (Tr. 492-493, 497, 500, 506-507, 511-517, 520-529). Therefore, the prosecutor was making a fair and accurate comment on the evidence already in the record. The prosecutor's comment was directly tied to, and supported by, the evidence. And, to the extent that the prosecutor's questioning may have been overly zealous or improper, it certainly did not rise to the level of creating such a defect in the proceedings that the outcome of the trial would have been different. Williams' fourth assignment of error is overruled.

{¶ 56} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court

. . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.

(Hon. John R. Willamowski, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
Andrew T. French
Anthony S. VanNoy
Hon. Frances E. McGee